9 P.3d 1236

Robert F. BLAHA and Ruth L. Blaha, husband and wife, Petitioners,-Appellants on Appeal,

and

Avery Pratt, an individual, and Tim Pratt, deceased, Petitioners,

v.

BOARD OF ADA COUNTY COMMIS-SIONERS, Garth M. Wilde and Pat Wilde, husband and wife; and E. Charles Palmer and Vella Palmer, husband and wife, Respondents on Appeal.

No. 25264.

Supreme Court of Idaho, Boise, February 2000 Term.

Sept. 6, 2000.

Jones, Gledhill, Hess, Andrews, Fuhrman, Bradbury & Eiden, PA, Boise, for appellants. Stephan A. Bradbury argued.

Connolly & Smyser, CTD., Boise, for respondents Wilde and Palmer. John P. Connolly argued.

Ada County Prosecuting Attorney's Office, Boise, for respondent Ada County. Alexander C. Yewer, Deputy Prosecuting Attorney argued.

WALTERS, Justice.

## NATURE OF THE CASE

This is an appeal from a decision by the Board of Ada County Commissioners approving the final plat for the Buckwheat Acres Subdivision. For the reasons stated below, we affirm the Board's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Garth and Pat Wilde and E. Charles and Vella Palmer are the owners of a forty-acre parcel located in the Area of Eagle City Impact that they proposed to subdivide into eight, five-acre residential lots to be known as Buckwheat Acres Subdivision. They submitted an application for subdivision approval to the Ada County Development Services, which was transmitted to the City of Eagle for action. The Eagle City Planning and Zoning Commission duly scheduled the application for consideration at its next regular session. The Commission voted to approve the transmittal with six specified conditions of approval, including compliance with the Eagle City Code standards for private streets. The matter was then scheduled for consideration by the Eagle City Council at its upcoming regular meeting. The minutes of the Council meeting of June 23, 1996, indicate that the Council moved to approve the preliminary plat of the subdivision located outside the limits of the City of Eagle but within the area of city impact.

The Ada County Board of Commissioners held a public hearing on the preliminary plat of the Buckwheat Acres Subdivision on September 25, 1996. The matter was continued to October 9, 1996, at which time the Board voted to approve the proposed findings and conclusions and the conditions of approval that had been attached to the preliminary plat application by the City. Following the order approving the preliminary plat, Robert F. and Ruth L. Blaha, neighbors and opponents of the proposed subdivision and private access road, filed a petition with the district court for judicial review of the Board's preliminary approval.

In a regular session held May 13, 1997, the Eagle City Council voted to approve the final plat and to recommend to Ada County that the plat of the Buckwheat Acres Subdivision be approved based upon the Eagle City Code. The City attached several conditions to its final approval, including but not limited to (1) compliance with the requirements of the Ada County Highway District (ACHD) and (2) a recommendation that Ada County approve a variance of Eagle City Code § 9–3–2–3:F, which would allow Holl Drive at the intersection with Valli–Hi Lane to remain at its current grade. The Blahas filed a petition with the district court for judicial review of the final plat approval by the Eagle City Council.

Aware of these conditions, and upon the knowledge that the ACHD would be requiring improvements to that intersection prior to platting,[1] Wilde and Palmer applied to Ada County for two variances concerning the subdivision. They sought a variance from the design requirements regarding road grades for the intersection of Valli–Hi Lane, the private road, and Holl Drive, the public road, which would serve the subdivision. They also sought a variance from the twenty-four-foot road width required by the Eagle City Code as it existed at the time of the original application to extend Valli–Hi Lane to allow a twenty-foot paved road width, consistent with the current Eagle City Code provision and Ada County Code § 8–13–3:A–6. Specifically, the owners' application requested approval of. a variance from Eagle City Code § 9–3–2–5:B2, regarding private streets, and from Policies 7204.11.1, 7204.11.3 and 7204.11.7 of the ACHD Development Policy

---

1. The findings and conclusions of the Ada County Planning and Zoning Commission entered June 27, 1996, contain the requirements set forth by the ACHD with respect to the intersection at issue.

Manual, regarding intersection design standards.[2]

The Board held a public hearing with respect to the variances, on January 7, 1998, at which the Blahas' counsel testified in opposition to the variances, arguing that the standards of the Eagle City Code governing private streets and intersections were being ignored. Thereafter, the Board issued its findings of fact and conclusions of law.

The Board found that access to the parcel proposed for development was by way of an existing private road which intersected the public road at a vertical curve exceeding current ACHD policy. The Board then determined that strict enforcement of ACHD policies would require extensive realignment and reconstruction of the public road, which was unreasonable and would create an undue hardship on the applicants not justified by a development generating only eighty vehicle trips per day. Because the ACHD had certified compliance with the standards outlined in its policy manual, as evidenced by a letter from Dave Szplett to E.C. Palmer dated November 7, 1996, the Board granted the variance with respect to the intersection design requirements.

With respect to the private road, the Board found that the proposal substantially complied with Eagle City Code § 9-3-2-5:B construction and design standards. The Board found that a twenty-foot road width would act to keep vehicle speeds low, safely accommodate the expected daily trips, and be more desirable than a twenty-four-foot road width, given the rural setting and low density of the proposed development. The Board noted that a twenty-foot road width satisfied the Ada County Code and concluded, in granting the variance, that the public interest would not be served by requiring the road to be paved to a width of twenty-four feet.

The Blahas petitioned the district court for judicial review of the Board's January 22, 1998, decision with regard to the variances.

The Blahas also filed a petition for review and a subsequent amended petition for review from the Board's final subdivision plat approval dated March 28, 1998. The various petitions for review filed by the Blahas regarding the Eagle City Council's final plat approval, the Ada County Board of Commissioners' granting of the variances and the Board's final plat approval were then consolidated by order of the district court.

In a decision issued December 12, 1998,[3] the district court affirmed the Board's action, holding that there was no reason to require the County to impose greater standards in the area than those required by the ACHD, whose standards established the appropriate method for analyzing the intersection and street design. The Blahas have appealed from the decision of the district court, raising challenges to the Board's authority to grant the variances and to its application of the relevant county and city codes in approving the final subdivision plat.

### STANDARD OF REVIEW

■ The Local Land Use Planning Act (LLUPA)[4] allows an "affected person aggrieved by a decision" to seek judicial review as provided in the Administrative Procedure Act (APA), I.C. §§ 67-5201 through -5292. I.C. § 67-6521(1)(d). An "affected person" as defined by the LLUPA is "one having an interest in real property which may be adversely affected by the issuance or denial of a permit authorizing the development." I.C. § 67-6521(1)(a).

Idaho Rule of Civil Procedure 84(a) provides for the district court's judicial review of actions of a local government or its officers or units. Judicial review shall be heard by the district court on the record before the agency. I.R.C.P. 84(b); I.R.C.P. 84(j). "Agency" is defined for purposes of Rule 84 as any board, commission, department or officer for which statute provides for the

---

2. The policies deal, respectively, with (a) a minimum design approach speed of twenty miles per hour or a site distance requirement; (b) a limit on the grade of the intersection to two percent for forty feet; and (c) a minimum center line.

3. This order bears only the case numbers of the Ada County Board of Commissioners' actions on the variances and the final plat approval.

4. I.C. §§ 67-6501 through -6537.

district court's judicial review of the agency's action. I.R.C.P. 84(a)(2)(D).

■ In a subsequent appeal from a district court's decision where the district court was acting in its appellate capacity under the Administrative Procedure Act (APA) the Supreme Court reviews the agency record independently of the district court's decision. *Ferguson v. Board of County Comm'rs for Ada County,* 110 Idaho 785, 718 P.2d 1223 (1986). The court shall affirm the agency action unless the court finds that the agency's findings, inferences, conclusions or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion. I.C. § 67–5279(3). In the case of a challenge to the approval or denial of an application under the LLUPA, the standard is stated as follows:

> [T]he courts of the state are directed to consider the proceedings as a whole to evaluate the adequacy of the procedures and resultant decisions in light of practical considerations with an emphasis on fundamental fairness and the essentials of reasoned decision-making. Only those whose challenge to a decision demonstrates actual harm or violation fundamental rights, not the mere possibility thereof, shall be entitled to a remedy or reversal of a decision.

I.C. § 67–6535(c). These two standards are not in conflict; but because we deem the latter statute to be less specific, we apply the well-established APA standard to the review requested herein.

### DISCUSSION

### I.

■ The Blahas first argue that the Board of Ada County Commissioners lacked jurisdiction to grant the variances to Section 9–3–2–5:B2 of the Eagle City Code and to the ACHD Policy Manual provisions 7204.ll.1, 7204.11.3, and 7204.11.7 dealing with private streets in a subdivision served by an intersection in the Area of City Impact of the City of Eagle. They assert that the Board's au-

thority to grant a variance is derived from I.C. § 67–6516 and is expressly limited to the itemization found in the statute. Because the variances that the Board granted regarding standards for road width and intersection design are not found in the statute, the Blahas argue that they are beyond the authority of the statute and thus invalid.

As defined in the Local Land Use Planning Act, a variance is a modification of the bulk and placement requirements of the zoning ordinance as to lot configuration or building size and location. I.C. § 67–6516. The variances to intersection design, road width and grade specifications, which are involved here but not itemized in the statute, are therefore not governed by the standards found in I.C. § 67–6516.

### A. Intersection design standards

■ The district court held that the entire subject of intersection design fell within the jurisdiction and authority of the ACHD and that the intersection of Valli–Hi Lane and Holl Drive was not part of the subdivision plat. The district court then found that the ACHD had granted an exception from its design criteria to allow the intersection in question as a feeder route to the Buckwheat Acres Subdivision. We agree.

The ACHD standards regarding road widths, grade, alignment, as well as construction and design standards, were adopted by reference in the Eagle City Code, whose provisions were made applicable in the impact area. Eagle City Code § 9–3–2–5:(B)(1) dealing with private streets provides that "all private street construction shall be in accordance with Ada County Highway District's structural standards for streets ... and shall further be in accordance with Ada County Highway District's intersection design and drainage requirements."

When the Buckwheat Acres Subdivision development application was considered by the ACHD on September 11, 1996, and December 11, 1996, the highway district approved the road width and intersection design standards on the condition that the owners provide a plan showing how the private road grade meets the public road, citing

to current district policy mandating a maximum approach grade of two percent for at least forty feet. The ACHD thereafter certified "that the submitted plans show that the existing Valli–Hi Lane/Holl Drive intersection meets these requirements." In effect, the ACHD, without a specific request for a variance, granted an exception to its intersection design requirements as provided by the ACHD Development Policy Manual. Policy No. 7104.1 allows the highway district commission, at its sole discretion, to vary, modify or waive the provisions of the policy manual to permit development of the property in a reasonable manner.

### B. Street Width Standards

Without citing to the particular road width provision to be applied to the Valli–Hi Lane extension, the district court held that using the ACHD standards was the appropriate method of analyzing the intersection and street design. The Blahas contend that the district court erred in affirming the Board's approval of a twenty-foot road width.[5] The Blahas, however, have not shown error in the application of the ACHD standards. Accordingly, we uphold the district court's affirmance of the Board's decision to allow a road width of twenty-feet for the private street, Valli–Hi Lane.

We conclude that it was unnecessary for the Board to grant the variances from the ACHD standards that had already been waived. The subsequent action by the Board of Ada County Commissioners merely ratified the decision of the ACHD from which no appeal had been filed. We find no reversible error in the Board's action.

### II.

■ Next, the Blahas challenge the final subdivision plat approval by the Board of Ada County Commissioners. They argue that the approval conferred was not the approval required by the ordinances made applicable in the impact area. See Eagle City Code § 8–8–3:C; Ada County Code § 9–2–3:C. Under the Blahas' interpretation of the ordinances, the City and the County both had a duty to provide due process protections of notice and a hearing prior to approving the subdivision. They argue that in view of the City's acknowledged failure to provide notice and a hearing, the County's final plat approval that followed was rendered invalid.

The decision of the Eagle City County approving the final plat of the Buckwheat Acres Subdivision was reviewed by the district court. In an order dated September 16, 1998, the district court determined that the Area of City Impact Agreement mandates that subdivision applications be submitted to both the City and the County, although the agreement does not confer equal jurisdiction to the City and the County. In light of Article XII, § 2 of the Idaho Constitution limiting a city's power to the area within its boundaries, the district court held that the agreement should be read to provide only for a review of the application by the City. The district court held that the sole purpose of the City regarding subdivisions located outside the city limits is to make a recommendation to the County with respect to whether the application is in conformance with relevant city codes. Finding the City's role to be merely advisory and not governed by the Local Land Use Planning Act (LLUPA),[6] the district court concluded that the City acted within its discretion in recommending approval of the final plat to the County, even though the subdivision did not meet the design requirements applicable to private roads and intersections.

■ To address this issue, we begin with an examination of the action required by the City in approving a subdivision plat application of a subdivision located in the area of

5. The Blahas maintain that the relevant road width standard is found in Eagle City Code § 9–3–2–5:B2, which provides as follows:

Except as may be otherwise set forth in this Section, private streets shall meet such design and dimensional requirements as the Council may determine are appropriate considering the proposed use and the site upon which the private streets are to be placed ... provided, however, that all private streets shall contain travel lanes a minimum of twelve (12) feet in width and shall otherwise provide for the safe, convenient and effective movement of both vehicular and pedestrian traffic.

6. Idaho Code §§ 67–6501 to –6538.

city impact. Pursuant to I.C. § 67–6526, the City and the County adopted ordinances providing for the identification of the area of city impact and for the application of plans and ordinances for the impact area. The mutually adopted ordinances of the City and the County provide that all subdivision plats situated within the area of city impact shall be submitted to the City for approval, in addition to County approval, as provided in Idaho Code § 50–1306. *See* Eagle City Code § 8–8–3:C; Ada County Code § 9–2–3:C.

The text of I.C. § 50–1306, which is entitled Extraterritorial authority—Property within the area of city impact, reads in part as follows:

All plats situate within an officially designated area of city impact as provided for in section 67–6526, Idaho Code, shall be administered in accordance with the provisions set forth in the adopted city or county zoning and subdivision ordinances having jurisdiction. In the situation where no area of city impact has been officially adopted, all plats situate within one (1) mile outside the limits of any incorporated city shall first be submitted to the said city, and approved by the council of said city before the same shall be recorded.... Such city approval shall be in addition to county approval. Within one (1) mile of the city, a city subdivision ordinance shall prevail over a county subdivision ordinance unless the city and county mutually agree upon any differences.

The statute, which does not specifically prescribe a dual approval process in an impact area as the Blahas contend, nevertheless attempts to define the respective jurisdictions of a city and a county that share contiguous boundaries but have not acted to create an area of impact, by outlining an approval procedure to be followed in the particular case where a subdivision is located within one mile of the city limits. Plats located in the area of city impact, under the statute, are to be administered in accordance with the city or county zoning and subdivision ordinances made applicable in the impact area. *See id.* Thus, the scope of the approval of the City of Eagle as regards a subdivision located within the Eagle Area of City Impact is not addressed by I.C. § 50–1306.

In addition to the Area of City Impact Agreement, the City and the County adopted a separate referral process whereby all county applications for planned subdivisions within the Eagle Area of City Impact are required to be sent to the City. *See* Eagle City Code § 8–8–4:A and B; Ada County Code § 9–2–4:A and B. The City and the County entered into a Referral Process Agreement in September 1987 specifying procedures and time frames to govern the processing of land use applications regarding the impact area.

Under Section 3.0 of the agreement [7] the Ada County Department of Development Services is required to send to the Eagle City Clerk all county applications for subdivisions within the Eagle Area of City Impact forty-five days prior to any county public hearing on such application, requiring the City to make recommendations to the County no later than thirty days after the City has received such application. Accordingly, the procedural steps contemplated by the contracting parties include (1) an applicant making application to the County, (2) the County transmitting the application to the City, (3) the City providing its recommendations, and (4) the County conducting a public hearing on the application. Based upon our review of the record, the path of the Buckwheat Acres Subdivision application followed the above-described process.

7. Section 3 provides:

The Ada County Department of Development Services shall send to the Eagle City Clerk all county applications for planned developments, subdivisions, rezones and conditional use permits located within the Eagle Area of City Impact, forty-five (45) days prior to any county public hearing on such application. The Eagle Planning and Zoning Commission or the Eagle City Council shall make recommendations to the Director of the Ada County Development Services on such application, in writing, and shall cite those Eagle Subdivisions Ordinance or Eagle Comprehensive Plan policies, goals, objectives or provisions supporting such recommendation. Such recommendation shall be received by the Director of the Ada County Department of Development Services no later than thirty (30) days after the Eagle City Clerk has received such application.

Taking the referral agreement and the implementing ordinances together, we conclude that the City reasonably interpreted the approval required by the ordinance to be in the nature of a recommendation prepared in the City's normal course of business. Such an interpretation assures input from the City, which has the expertise to review the subdivision application for conformance with its code provisions, in order to provide continuity in the event of city expansion into the designated impact area and to promote cooperation between the neighboring City and County.

 Beyond the corporate limits of a city, the county has jurisdiction by statute to accept and approve subdivision plats. *See* I.C. § 50–1308.[8] For the City of Eagle to be allowed to exercise co-equal jurisdiction with Ada County in the impact area lying beyond the city limits would not only be in conflict with the statute but also inconsistent with constitutional limitations placed on a city's powers. Article XII, § 2 of the Idaho Constitution provides that any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws. This Court has held that the power of cities and counties only exists within the sovereign boundaries of the cities and the counties respectively. *See Clyde Hess Distributing Co. v. Bonneville County,* 69 Idaho 505, 210 P.2d 798 (1949) (valid county regulation enforceable so far as territory embraced in county was concerned, exclusive of municipalities where the regulation was without force and effect); *Boise City v. Blaser,* 98 Idaho 789, 572 P.2d 892 (1977) (To give effect to a county permit within city limits would be to violate the separate sovereignty provisions of Idaho Const., art. XII, § 2.); *Hobbs v. Abrams,* 104 Idaho 205, 657 P.2d 1073 (1983) (ordinance or regulation must be confined to the limits of the governmental body enacting the same). Therefore, any reading of the implementing ordinances granting the City the power to restrict development in the impact area by denying approval of a subdivision application made to the County would be an extraterritorial exercise of jurisdiction by the City and an infringement on the constitutional right of the County.

We conclude that the power to approve a subdivision application in the impact area resides exclusively with the County. We hold that the City's action in reviewing the subdivision application is advisory only and is not a prerequisite to action by the County. Finally, we hold that the action of the City did not require that due process protections be afforded to the Blahas, who by their own admission were provided notice and an opportunity to be heard prior to the County granting final approval of the Buckwheat Acres Subdivision. Having been accorded due process at the County stage of the approval process, the Blahas cannot claim that the approval was granted in violation of the ordinances or upon unlawful procedure. We therefore affirm the Board's approval of the final plat of the Buckwheat Acres Subdivision.

### III.

The Blahas request an award of fees pursuant to I.C. § 12–117 on the basis that the adverse party is a county. To obtain fees under I.C. § 12–117, the court must not only find that the county acted without a reasonable basis in fact or law but also must find in favor of the party seeking fees. Neither of these requirements has been satisfied and accordingly, no award of fees to the Blahas under this statute is appropriate.

### IV.

 The Board asserts that it is entitled to recover its attorney fees on appeal "because the Board has had to defend this unwarranted claim," and under I.A.R. 41. The Board argues that having failed to appeal the decision of the ACHD, the Blahas pursued this appeal of the final plat approval regardless of the ACHD's clear, statutory authority

---

8. The statute reads in part as follows:
 If a subdivision is not within the corporate limits of a city, the plat thereof shall be submitted, accepted and approved by the board of commissioners of the county in which the tract is located in the same manner and as herein prescribed.

over public roads and access of private streets to public roads. However, because the Court is not left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably and without foundation, we decline to award fees in this appeal. *See Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979).

## CONCLUSION

The Ada County Board of Commissioners' final approval of the Buckwheat Acres Subdivision plat is hereby affirmed. Costs are awarded to the respondents; no attorney fees on appeal are awarded.

Chief Justice TROUT and Justices SILAK, SCHROEDER and KIDWELL concur.